Our final case for argument is 26-1196 Schmeisser v. AC-Unity. Mr. Hartley, please proceed when you're ready. Good morning. May it please the court. Mike Hartley on behalf of the appellant Schmeisser GmbH. The district court's dissolution of the stipulated preliminary injunction was premised on a legally erroneous finding of indefiniteness in its markman order. There's ample basis in the intrinsic evidence, the claim language itself, the specification, the figures, and the prosecution history for a proceeding to conclude with reasonable certainty the scope of the claims. Appendix page 49 from the district court's order on reconsideration shows one of the clearest examples of the court's error. There, the district court stated unequivocally that the distant terms are, quote, of course measurable in a constructed magazine. If the terms are, of course, measurable, they're reasonably certain. We know where, we know how. You're sort of going to the merits of whether or not it's definite or not. I mean, isn't your first point that he applied the wrong law? Yes, the first point is that. He blended all of 112 as though it was a single inquiry. It's like enablement, written description, indefiniteness, up, you're out. Absolutely correct, Your Honor. The issue that the district court focused on was this issue of clearance values. Clearance values are not a claim term. What they looked at was just the plain language of plain 112A. You're in the weeds. I'm sorry? You're in the weeds. Get out of the weeds. Yes. Like, come back to the fairway. So where, in his opinion, did he misstate the law? Show me. Certainly, Your Honor. Looking at the Markman order, which is appendix pages 12 to 14, this was under the court's stated, quote, standard for adjudication of indefiniteness. There, the court states that it requires the patentee to be specific enough, I'm sorry, requires the patent to be specific enough for a person of ordinary skill in the art to build and employ the claimed invention, directly citing section 112A. This is a definiteness case. We're talking at 112B. As this court made clear in… So build and employ, you think, parallels enablement, not indefiniteness. Yes, but the court also cited at page 19 of the appendix in the Markman order that the definiteness standard will be satisfied if the posseda can, quote, build and use. That's 112A. Do you think he got confused on that? And where did that come from? It's because of all of the testimony that was focused on this concept of clearance values. The district court and AC Unity below presented clearance values as whether you can measure. Measurement and design is not the same.  The clearance values made it so that you couldn't know exactly what the measurement would be before you build it. Exactly. Something like that. Before you build it. I was just trying to figure out what the source of law was, if anything, for this confusion. And you might not know what it is. It doesn't really matter. It just seems pretty far astray of what our standard is. So I was trying to figure out where it came from. Again, it came solely from the court focusing. It called this issue of clearance values a buzzsaw that destroyed the definiteness of the claim. It may not matter, but I do have the same question, how the district court was led astray. And your motion for reconsideration at 2101 and 2102, it seems like you blame it on the defendants and their experts' testimony. Is that the source of this build and use and clearances focus? Yes, because if you look at Mr. Zeller's opening report on claim construction, there's no discussion of clearance values. It's simply looking at distance A, for example. The claim language is clear. That's the distance from the interior surface of the front wall to the interior surface of the back wall. So as long as they're not mushed together, that's the distance?  At the end of the day, this is a box. We have a front wall, a back wall, two side walls, and it encloses an interior space. Those walls are separated by a distance. Claim 1 simply identifies the front wall to the back wall as distance A. Looking at Mr. Zeller's opening report below on claim construction, no mention of clearance values. It just says, I can read front wall to back wall, and I know what it means. A person of ordinary skill in the art would know what it means. Same for distance B, side wall to side wall in Region 1. Distance C, side wall to side wall in Region 2. There's nothing indefinite about get a ruler and measure from the front wall to the back wall. Again, looking at the court's Markman order, it referenced clearance values 30 times. Clearance values is not a claim term. We simply have to have a distance. Looking at the post-hearing briefing, the court again said, show me how you're going to build one of these. What are the steps you'll take to design it? How will you determine the cartridge length? How will you determine the clearance value? How will you put them together? How will you show your work? How are you going to design it? Design is not the inquiry under 112B. Yes, under 112B. If I agree with you that the claims were not proven indefinite under the correct legal standard, it seems I have to exercise pendant appellate jurisdiction to order the district court to vacate its summary judgment ruling, which strictly speaking is not in front of us, right? This is just an appeal from a dissolution of a PI. It is an appeal of the dissolution of the preliminary injunction under 1292A1 and to this court specifically under C1. But if we look at this court's decision in cross-medical, that wasn't a question of pendant jurisdiction. The court simply said that when the issues to the reason for entry or denial of the injunction are inseparably connected to the summary judgment issues, this court has to rule on them. That wasn't done in the context of pendant jurisdiction. Pendant jurisdiction, however, is appropriate here because these issues are undeniably intertwined. And what about the preliminary injunction itself? Just assuming that I agreed with you on indefiniteness, time has moved on. Entering a PI, there's a lot of things that you would have to show. I know there was a stipulation way back when. Are you asking us to order the district court to reinstate the preliminary injunction or would we just remand for further proceedings? We are asking that the injunction be reinstated, the reason being that the only issue that's been brought up is this issue of indefiniteness. That was a clear legal error in the district court's dissolution of the injunction on that basis was a clear error. That was an abuse of discretion. As your Honor noted, this was a stipulated injunction. There was no findings on weighing of the hardships, no findings specifically on irreparable harm. But to that point, as we've pointed out in the briefing, and AC Unity has not disputed here, there's now ACU magazines on the market that are being sold at an 80% discount against Schweitzer's historical pricing. As the district court found in its order in joining ACU's prior distributor, RTG, there's evidence and a conclusive finding of prejudice based on price erosion. The stipulation to the preliminary injunction in January 2024 did expressly say it was without prejudice to any future challenge on the merits allowed by law. So even if we did as you wanted, they'd have the right to move to vacate the preliminary injunction if they think they have a basis for that. Is that right? If it's remanded with the injunction in place, certainly they would have the opportunity to file a motion to ask the court to do whatever they want to ask the court to do. If there are no further questions, I reserve my remaining time for rebuttal. Ms. Vance? Good morning, Your Honors. May it please the court. Katherine Vance, appearing on behalf of a defendant, appellee, AC Unity. Subject to Your Honor's questions, I plan to address three major points this morning. Jurisdiction, the court's correct application of the Nautilus standard, and the court's correct determination that the distance terms are indefinite. So first, the preliminary injunction analysis does not require this court to reach the merits of the indefinite claim, only to determine whether the district court abused its discretion in concluding that Schmizer could no longer demonstrate a likelihood of success on the merits. The district court Respond to cases like Hillefex and Integris. I would say that this court has, it's in this court's discretion of whether to exercise pendent jurisdiction over the Markman order. And it's our position that doing so would be premature and possibly cause piecemeal litigation where we would be back here again because there are other invalidity and unenforceability claims pending. Would you want to talk about indefiniteness?  How can you contend that the standard that was applied is correct under our law? The district court did apply the correct Nautilus standard. He carefully considered all of the arguments, the expert testimony. He had a carefully reasoned opinion. And then again. What about the language at page A13? In page A13? Yeah. JA13. That you have to be able to, indefiniteness demands that a patent be specific enough that a person of ordinary skill in the art be able to build the invention. Do you have any cases that frame indefiniteness in that way? So I think what's happening here is during the testimony at the Markman hearing, everybody agreed that there was a required. I mean, your answer could be, no, I don't have a case that frames it in this way, but maybe this is not exactly what the court meant. I mean, so what is your answer? If you could give me a yes or no on that question before you go into your explanation, that would be helpful. Can I turn to the page and read? Yeah, sure. 13. Yep, it's JA13, and I can read to it. It says, indefinite demands that a patent be specific enough for a person of ordinary skill in the art to be able to build and employ the claimed invention. And then it cites the entire passage of 35 U.S.C. 112a, where, you know, it's our reading that probably there was too much read into his requirement of indefiniteness. He had blended indefiniteness with written description and enablement. Yes, Your Honor. I believe if you keep reading, though, what we assert is that in this court's Markman order, he included 112a language to show the scope of 112 in general. And then throughout his order, he narrowed to 112b, and he repeatedly cited the Nautilus standard. Do you think it's correct that for a claim to be definite, it has to teach someone how to build the invention? No, Your Honor. May I? Does that answer your question? Yes. Since we're on the topic of the clearance values, during the Markman hearing and in the prior deposition testimony, everybody agreed that these distances, A, B, C, would have some sort of clearance baked into them. It's something that would be required. And during the Markman testimony hearing, Schmeisser's expert was questioned on where that information would come from. And for the first time at the Markman hearing, he said conclusively those would be in the SAME or the Mills facts. And we were given an opportunity to test that theory to show what a posse would actually know. And regarding the post-hearing briefing exercise, as I mentioned, this was prompted by Schmeisser's own expert, Mr. Zeller. And we assert that it is proof that the court was evaluating whether or not a posse could build an actual magazine, but that misses the whole point of it. Their expert's identification of the SAME and Mills facts as the source of clearance, for the first time, conclusively cemented the patent's missing information on that. And the post-hearing briefing was purely an exercise to see if it was in fact true that that information could be supplied. Can the missing information of the patent be supplied by the standards? And would a posse know that? As the briefing and testimony show, the answer to both of those are no. And second, I know that we've just discussed this. The district court did make reference to the Section 112A in its Markman order, just as background. And there are two points that I want to make on this. And as I mentioned before, the first one of those is this is not a novel way of drafting an order or a brief. The court was providing the scope and slowly sharpening the lens through which it conducted its evaluation. Can you just explain to me why this claim is indefinite? What claim term in particular is indefinite? We assert that the district, let me get to my page. It's like a first distance A and a first distance B and a second distance B and a third distance C, right? Yes, Your Honor. The distances are the first distance A, second distance B, third distance C, and offset B. And is your argument that it's indefinite because a skilled artisan would not know from what point to what point to measure to ascertain the distance? What exactly is your argument? So it's twofold, Your Honor. So yes, these distances can be measured on a finished magazine. We don't necessarily dispute that. But the definiteness inquiry is not about whether you can put a ruler on a completed product after the fact. It is about whether a person of ordinary skill in the art reading the patent knows before they build anything what the claim boundaries are. And that is what Nautilus requires. What if the claim boundary is just broad? Why? There has to be a distance. Just requiring a distance is not sufficient. Why? It does not give you the bounds. You know it's a distance from point A to point B, and it's a distance in a particular environment that has many more limitations. Consider this analogy. Appellant hands you a builder or hands a builder a blueprint for a house. And it identifies that the master bedroom needs to be a distance away from the kitchen. But it identifies no starting points, no end points, or where at what level within that house. Doesn't that just give the builder a lot of discretion? It could. But how is the builder to know whether or not they are building it to the specification or the requirement? Maybe there's other limitations that help the builder know that. For example, there might be a limitation that one dimension compared to another dimension has to result in a third dimension, for example. Yes, and that is similar to the situation here where what the claims describe are these distance terms but in relationship to one another, as you will. But that's not enough. As Mr. Hartley mentioned, the patent describes a box. Describing a box is not a sufficient disclosure. Describing a box is not sufficient for somebody who's building a magazine to know whether or not they fall within the scope of the 045 patent. I know you aren't even sure that we have jurisdiction here, at least not in full. But if I were just hypothetically persuaded that these claims have not been shown to be indefinite, what would you have me do given the jurisdictional situation and the status of this case? This court can decide that the terms are definite? Is that the answer to your question? I guess I didn't know if your argument went so far as even if I think they're definite, I should just not say it. But that's not your position. Did I answer your question? I think so. Thank you. Okay. I want to kind of back up to this, just measuring it, just measure the product. Appellant is saying that the claims are clear because you can measure a physical product. That the distance terms are definite because a competitor can just put a ruler on a finished magazine and obtain a number. But what physical product are they referring to? Are they referring to their product that we must assume practices the patent because they say so? Do you have to go buy a Schmeisser magazine and cut it open and measure it? And does that help you understand? An even more concerning option and one that they mention on page 20 of their reply brief. The District Court, AC Unity, and Schmeisser all agree that the necessary measurements for the distance terms are readily taken after an accused article has been made. Is this just any competitor product? This framing is a problem. And Schmeisser is conflating the question of whether distances are physically measurable on a completed product with a separate legal question of whether the claims provide objective boundaries for a person of ordinary skill in the art reading the patent. And these are different inquiries. To be clear though, we do not agree that measuring an accused device will tell you anything about the scope of the 045 patent. And these arguments get the law exact wrong. A patent is a blueprint. It's not a finished physical product. Under Nautilus, a competitor is entitled, a posita, is entitled to read that blueprint and know with reasonable certainty where the claim boundaries lie before it ever commits resources to manufacturing. To have it any other way would reduce the public notice function. And this is also precisely the zone of uncertainty against which the definiteness requirement guards. Further, extrinsic evidence of a completed invention cannot retroactively fix an indefinite claim. Under Schmeisser's approach, a competitor would be required to invest time, money, and resources engineering a magazine only to discover after the fact that they have crossed some invisible, uncharted line. And this is not public notice. It's a trap. This court is clear. The boundary of a patent claim must be fixed and objective. And again, Nautilus provides that a patent is indefinite if the claims read in light of the specification and prosecution history fail to inform a person of ordinary skill in the art with reasonable certainty of the scope of the invention. Noticeably absent from that standard is a physical product. And I would like to touch on the expert testimony below. The most powerful evidence of indefiniteness came from appellant's own witness, Mr. Zeller. And the district court did adopt Schmeisser's own proposed procedure definition, which was a design engineer who is familiar with the design and operation of a magazine for use in a firearm. Despite this, Mr. Zeller testified that determining the clearance values necessary to calculate the distance terms requires 18 to 24 months of specialized experience, which far exceeded the adopted procedure definition. But now on appeal, Schmeisser claims that this testimony concerned only general firearm safety knowledge, not magazine design. But that is not what the transcript shows. The district court questioned Mr. Zeller directly about where a posita would find these clearance information for purposes of magazine construction, and Mr. Zeller answered 18 to 24 months of industry experience. He also provided some clearance values based on application, which he then changed in the post-hearing briefing. The district court credited his testimony, and its factual finding on this point should be reviewed for clear error. When a patentee's own expert concedes that the claims cannot be understood with reasonable certainty by the patent's intended audience, indefiniteness is properly found. Is there anything you guys... Do your honors have any questions? We're good. Thank you, Ms. Vance. Thank you. Mr. Harley. Very briefly, Your Honor, I think my colleague's argument has simply confirmed that clearance values are not a claim term. Clearance values are not what we're here to discuss in the context of indefiniteness. As a... Just simply as a last point, Dr. Speck, their expert, admitted in her testimony at the Markman hearing, clearance is a design choice. It's not a claim element. Unless Your Honor has any further questions... Thank you. Thank both counsel. This case is taken under submission.